UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD W. ILLES, SR., M.D.  :
    Plaintiff :
:
vs. : CIVIL NO. 1:12-CV-0964
:
:
JEFFREY BEARD et al., :
    Defendants :
:
:
:

*M E M O R A N D U M*

*I.*    *Introduction*

Plaintiff, a prisoner at the State Correction Institution at Albion ("SCI-Albion") brings the instant action relating to his temporary stay at the State Correction Institution at Camp Hill ("SCI-Camp Hill") in 2010. During his placement, Plaintiff alleges that Defendants, prison officials, violated his First, Fourth, Eighth, and Fourteenth Amendment rights. Presently before the court are Plaintiff's motion for a preliminary injunction and motions to dismiss filed by Defendants, Jeffrey Beard, PhD, R. Carberry, Chris Chambers, Mr. Ellenberger, John Horner, Kuzar,[1] John Murray, Ian Taggart, C.O. Umholtz, Dorina Varner, and Randy Bare.

---

[1] Plaintiff's complaint refers to Defendant Kuzar as "Lt. Mikizar."

*II.    Background*

From August 5, 2010 to August 31, 2010, Plaintiff was temporarily transferred from SCI-Albion to SCI-Camp Hill for a court appearance. During this time, he was housed on E-Block, a "control block." Plaintiff alleges that it is the policy of SCI-Camp Hill to place all inmates transferred for court appearances on this block. He asserts that the conditions on this block were substantially worse than the general population. For example, Plaintiff was locked down for twenty-three hours per day and received all meals in his cell. He was offered one hour a day of recreation time, and his phone calls and visits were limited. Plaintiff contends that placing inmates transferred for court appearances on a restricted block is retaliation for their attempt to access the courts, in violation of the First Amendment. He complained about the policy to Defendants Chambers and Ellenberger. He also filed grievances about the policy, but they were denied by Defendants Horner, Murray, and Varner.

While housed at SCI-Albion, Plaintiff alleges that the doctors there prescribed him Celebrex and Ultram to control pain related to severe degenerative joint disease, neuropathic pain, lower back pain, and chronic pain syndrome. He also received Lexapro, an antidepressant. On August 6, 2010, upon being transferred to SCI-Camp Hill, Plaintiff was seen by a physician's assistant, Sheila McGinnis. McGinnis discontinued Plaintiff's prescriptions for Celebrex and Ultram. Plaintiff made requests for pain medication and received a response from Dr. Beaven, the medical director at SCI-Camp Hill. Dr. Beaven declined to provide Plaintiff with these medications. Plaintiff was

2

seen by Dr. Kcomt regarding his request for Lexapro. Dr. Kcomt declined to provide Plaintiff with this medication. Plaintiff filed grievances with Defendants Bare, Murray, and Varner about the medical staff's refusal to provide him with the requested medications.

Plaintiff requested access to the law library at SCI-Camp Hill to prepare an emergency injunction against the medical staff requiring them to provide him with his medications. Plaintiff was only allowed thirty minutes at the law library during his twenty-six days at SCI-Camp Hill. He was denied additional time by the E-Block Manager, Defendant Chambers and law library staff. The law library staff indicated that the policy was to provide E-Block residents only thirty minutes of law library time per week. Plaintiff filed a grievances to obtain additional access to the library, but they were denied by Defendants Chambers, Murray, and Varner.

Plaintiff alleges that E-Block policy required inmates to have their beds made, be fully dressed, and standing by the door to receive their meals. If inmates failed to comply, they did not receive meals. Plaintiff contends that as a result of being denied medications, he suffered from serious pain that made these tasks difficult to perform. For this reason, Plaintiff was denied one or two meals each day. He spoke with Defendant Chambers about the issue, and Chambers said the policy had to be followed to receive meals. Plaintiff filed grievances that were denied by Defendants Taggart, Murray, and Varner.

While housed at SCI-Camp Hill, Plaintiff was visited by family members. Before the visit, Plaintiff was strip searched in front of another inmate, who was also

being strip searched prior to a visit. The search took place in a dressing room with large mirrors that allowed dozens of other inmates to see Plaintiff. Plaintiff filed grievances that were denied by Defendants Kuzar, Murray, and Varner.

Plaintiff alleges that E-Block policy required inmates waiting to shower to stand in line with a towel wrapped around the lower half of their bodies. Plaintiff asserts that he suffers from gynecomastia, abnormal enlargement of male breasts, that could be seen because the towel did not cover his upper body. Once inside the shower, there were no barriers to protect nude inmates from the view of other inmates and staff, including female staff. Plaintiff filed grievances that were denied by Defendants Carberry, Murray, and Varner. He contends that the shower policies violated his right to privacy.

On April 13, 2012, Plaintiff filed the instant action in the Court of Common Pleas of Cumberland Count. On May 22, 2012, Defendants removed the case to this court. On June 11, 2012, Plaintiff filed a motion for a preliminary injunction. On June 15, 2012, Defendants Beard, Carberry, Chambers, Ellenberger, Horner, Kuzar, Murray, Taggart, Umholtz, and Varner moved to dismiss. On January 28, 2013, Defendant Bare also filed a motion to dismiss.

*III.    Standard of Review*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

*IV.        Discussion*

Defendants Beard, Murray, Varner, Bare, Taggart, Horner, Chambers, Carberry, and Kuzar argue that all constitutional claims against them should be

5

dismissed, because Plaintiff failed to allege any personal involvement. In a § 1983 action, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). The personal involvement requirement can be met through allegations of personal direction or knowledge and acquiescence. Id.

*A. Failure to Provide Prescription Medications (Counts I and II)*

Counts I and II of Plaintiff's complaint relate to his medical treatment at SCI-Camp Hill. He alleges that the medical staff there failed to provide him with medications he was receiving at SCI-Albion. Plaintiff's complaint indicates that he was receiving treatment from the prison doctors, but sought a specific course of treatment through grievances submitted to Defendants Bare, Murray, and Varner. He names Defendant Beard, Secretary of the DOC, as a Defendant, alleging that he is responsible for all policies of the DOC. We find Plaintiff's allegations regarding the failure to respond to his grievances insufficient to show personal involvement. See Brooks v. Beard, 167 Fed. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (finding allegations that a prison official inappropriately responded to a grievance about medical treatment did not establish personal involvement). Plaintiff also fails to state a claim against Defendant

6

Beard. See Rode, 845 F.2d 1207 ("liability cannot be predicated solely on the operation of *respondeat superior*"). For these reasons, we will dismiss Counts I and II of Plaintiff's complaint.

### *B. Access to the Law Library (Count III)*

Plaintiff's third claim relates to his lack of access to the law library. He alleges that the law library staff told him the policy of SCI-Camp Hill only allowed E-Block inmates access to the library once a week for thirty minutes. He contends that he was only able to go to the library once during his twenty-six days at SCI-Camp Hill, and without additional time he was not able to bring a motion for a preliminary injunction regarding his medical treatment. He filed grievances with Defendants Chambers, Murray, and Varner. He also alleges that Defendant Beard is responsible for all policies of the DOC, including the policy limiting the time allowed by E-Block inmates to use the law library.

Defendants contend that Plaintiff has failed to allege sufficient personal involvement to state a claim. We agree that Defendants Chambers, Murray, and Varner, as officers responding to grievances, were not personally involved with the alleged constitutional violation. See Brooks v. Beard, 167 Fed. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (finding allegations that a prison official inappropriately responded to a grievance about medical treatment did not establish personal involvement). Plaintiff contends that Defendant Beard is responsible as a result of the policy restricting access to the law library for E-Block inmates. However, we do not find that this alleges sufficient

7

personal involvement.  See Rode, 845 F.2d 1207 ("liability cannot be predicated solely on the operation of *respondeat superior*").

Furthermore, "[t]o establish a cognizable access to courts claim, a complainant must demonstrate that: (1) he suffered an 'actual injury' (i.e., that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy, save the present civil rights suit, that can possibly compensate for the lost claim." Williams v. Clancy, 449 Fed. Appx 87, 89 (3d Cir. 2011) (citing Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  Plaintiff alleges that he was not able to file a motion for a preliminary injunction.  Plaintiff, however, was able to file the present civil rights complaint and a related complaint against the medical staff.  He has filed for a preliminary injunction and seeks damages for the medical treatment he received.  For this reason, Plaintiff is not able to demonstrate that he has no other remedy to compensate for the loss of his access to the courts and the claim must be dismissed.

### *C.  Meal Procedures (Count IV)*

Plaintiff alleges that as a result of not receiving certain medications, he suffered from significant pain and stiffness.  This pain and stiffness prevented Plaintiff from making his bed, getting dressed, and standing at his cell door at meal times, as required by SCI-Camp Hill policy to receive meals.  As a result, Plaintiff was denied meals.  He complained about the policy to Defendant Chambers, the E-Block Manager.  Chambers explained that the policy must be followed to receive meals.  Plaintiff also filed grievances with Defendants Taggart, Murray, and Varner.  Plaintiff alleges that

Defendant Beard is responsible for all DOC policies and ensuring that the constitutional rights of inmates are not violated. We find the allegations against Defendants Taggart, Murray, and Varner are insufficient to demonstrate personal involvement. See See Mincy v. Chmielsewski, 2013 U.S. App. LEXIS 234, 2013 WL 49765 (3d Cir. 2013) (nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement"); Rode, 845 F.2d 1207 ("liability cannot be predicated solely on the operation of *respondeat superior*"). Because Defendant Chambers does not challenge this claim, it remains against him.

*D. Privacy Claims (Count V and VI)*

Plaintiff alleges that Defendants Beard, Varner, Kuzar, Umholtz, and Carberry violated his Fourth and Eighth Amendment rights when he was subjected to a strip search within the view of other inmates and was forced to shower within the view of other inmates and staff, including female staff. He filed grievances with Defendants Carberry, Murray, and Varner about the shower policy requiring inmates to wait in line with a towel wrapped around the waist and the lack of privacy barriers in the showers. He filed grievances with Defendants Kuzar, Murray, and Varner about the strip search. He also complained to Defendant Umholtz about the strip search. Plaintiff argues that Defendant Beard is responsible for all policies of the DOC and for ensuring that the constitutional rights of all inmates are not violated. The allegations against Defendants Kuzar, Murray, Varner, and Beard are insufficient to allege personal involvement. See

9

See Mincy v. Chmielsewski, 2013 U.S. App. LEXIS 234, 2013 WL 49765 (3d Cir. 2013) (nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement"); Rode, 845 F.2d 1207 ("liability cannot be predicated solely on the operation of *respondeat superior*").

Defendants argue that Plaintiff fails to state a privacy claim with respect to the strip search and shower procedures. "[V]isual body cavity searches may be conducted by prison officials without probable cause, but that they must be conducted in a reasonable manner." Brown v. Blaine, 185 Fed App'x 166, 169 (3d Cir. 2006) (nonprecedential) (citing Bell v. Wolfish, 441 U.S. 520, 559-60, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). When determining the reasonableness of a search, we must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. Courts have found that when leaving and entering a segregated unit, such as the one in which Plaintiff was housed, such searches are constitutionally permissible. See Aruda v. Fair, 710 F.2d 886 (1st Cir. 1983) (finding strip searches conducted after visits from outsiders to be constitutional); Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir. 1986) (permitting visual body cavity searches when leaving and entering the exercise area of a prison); Campbell v. Miller, 787 F.2d 217, 228 (7th Cir. 1986) (validating strip search of high security inmates when going to the law library).

10

Plaintiff only contests the search because it was conducted in an area in which he could be seen by other inmates. A number of courts have determined that strip searches may be conducted in the presence of staff and other inmates. See DiFilippo v. Vaughn, 1996 U.S. Dist. LEXIS 8823, 1996 WL 355336 (E.D. Pa. 1996); Johnson v. Aderhold, 2012 U.S. Dist. LEXIS 10197 (M.D. Pa. 2012) (Nealon, J.); Elliot v. Lynn, 38 F.3d 188 (5th Cir. 1994); Franklin v. Lockhart, 883 F.2d 654 (8th Cir. 1989); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1998). In light of these decisions, we find Plaintiff's allegations insufficient to state a privacy claim relating to the strip search.

Plaintiff contends that the prison shower policy violates his constitutional right to privacy. He alleges that he was required to wait in line for the shower with a towel wrapped around his waist, and the showers lacked visual barriers, allowing other inmates and female staff to see him showering. Defendants argue that the reasoning used in the strip search claim should be applied in the shower policy claim. Although similar in nature, Plaintiff's privacy claim relating to the shower raises an additional issue, because he alleges he was seen by female staff members. Even with this additional claim, however, we do not find Plaintiff's allegations sufficient to state a constitutional claim. See Cookish v. Powell, 945 F.2d 441, 447 (1st Cir. 1991) ("even assuming such a protected right, inadvertent and occasional observations, or casual observations restricted by distance, of inmates dressing, showering, being strip searched or using toilet facilities do not rise to the level of constitutional infringement"); Timm v. Gunter, 917 F.2d 1093, 1102 (8th Cir. 1990) ("opposite-sex surveillance of male inmates, performed

11

on the same basis as same-sex surveillance, is not unreasonable . . . Whatever minimal intrusions on an inmate's privacy may result from such surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."). For these reasons, we will dismiss Counts V and VI of Plaintiff's complaint against all Defendants.

### E. Retaliation (Count VII)

Plaintiff's final claim relates to the SCI-Camp Hill policy that requires inmates temporarily housed at the prison to be placed on a control block. Plaintiff's complaint alleges that his First and Fourteenth Amendment rights were violated as a result of this policy. He argues that this is a retaliatory action that penalizes inmates for seeking to access the courts.

Defendants Beard, Varner, Murray, and Horner contend that Plaintiff failed to allege personal involvement. Plaintiff alleges that he discussed the issue with Defendants Chambers and Ellenberger, and they told him that it was DOC policy to place inmates transferred for court appearances on a control block. Plaintiff filed grievances about the policy with Defendants Horner, Murray, and Varner. We agree with Defendants Horner, Murray, and Varner that these allegations are insufficient to allege personal involvement. See Mincy v. Chmielsewski, 2013 U.S. App. LEXIS 234, 2013 WL 49765 (3d Cir. 2013) (nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement"). Plaintiff also alleges that Defendant Beard was responsible for all policies

of the DOC and ensuring the constitutional rights of inmates are not violated. We find that this, too, fails to allege personal involvement. See Rode, 845 F.2d 1207 ("liability cannot be predicated solely on the operation of *respondeat superior*").

Defendants Chambers and Ellenberger seek to dismiss this claim, because being placed in a "control block" does not implicate a liberty interest. "Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Once a plaintiff has made this showing, a defendant may overcome the retaliation claim by showing "by a preponderance of the evidence that it would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citation omitted).

The relevant inquiry is whether the adverse action by prison officials is sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Mitchell, 318 F.3d at 530.  The Third Circuit has found that a fact finder may find placement in administrative segregation, with conditions similar to those described by Plaintiff, may deter a person of ordinary firmness from exercising his constitutional rights. See Allah, 229 F.3d at 224.  For this reason, we decline to dismiss this claim as to Defendants Chambers and Ellenberger.

*F.  Preliminary Injunction*

Plaintiff filed a motion for a hearing and a preliminary injunction ordering Defendants to provide Plaintiff with the medication prescribed by his doctors at SCI-Albion in the event he is housed at SCI-Camp Hill for court proceedings.  A preliminary injunction is an extraordinary remedy that is not granted as a matter of right.  Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982).  To obtain a preliminary injunction, Plaintiff must demonstrate a reasonable likelihood of success on the merits and that he will be irreparably harmed if the injunction is not granted.  See Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998) ("Federal Rule of Civil Procedure 65 permits a court to grant a preliminary injunction if the moving party demonstrates a likelihood of success in the litigation, and that he will suffer great or irreparable injury absent an injunction."). Courts weigh the following factors in determining whether to issue a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits;
> (2) whether the movant will be irreparably injured by denial of the relief;
> (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and
> (4) whether granting the preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994).  18 U.S.C. § 3626 further limits the court's ability to issue preliminary injunctions.  The statute provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity.

18 U.S.C. § 3626(a)(2). "Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution." Abraham v. Danberg, 322 Fed. App'x 169, 170 (3d Cir. 2009) (nonprecedential) (citation omitted).

Plaintiff requests a preliminary injunction ordering "the Defendants to provide Plaintiff his usual, necessary medications while temporarily housed at SCI-Camp Hill." (Doc. 6, at 2).  Plaintiff has not demonstrated that he would be irreparably injured by denial of the injunction.  As the Third Circuit explains, "more than a *risk* of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (citation omitted) (emphasis added). Plaintiff asserts that he will be housed at SCI-Camp Hill when transferred for trial, but there is no evidence that Plaintiff will be so housed.  Without a clear showing of *immediate* irreparable injury, Plaintiff's request will be denied.  Because we find that the relevant facts are undisputed, they may be based on affidavits and other documentary evidence, making a hearing on Plaintiff's motion unnecessary. Voicenet Communs., Inc.

v. Pappert, 126 Fed. App'x 55, 60 (3d Cir. 2005) (nonprecedential). For these reasons, we will deny Plaintiff's motion for a preliminary injunction.

*V.*     *Conclusion*

We will grant Defendants' motions to dismiss Counts I, II, III, V, and VI of Plaintiff's complaint. Defendants Taggart, Murray, Varner, and Beard will be dismissed from Count IV, but the claim will remain as to Defendant Chambers. We will grant Defendants' motions to dismiss Count VII as to Defendants Horner, Murray, Varner, and Beard. Count VII will remain as to Defendants Chambers and Ellenberger. Leave to amend will be denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002). Plaintiff's motion for a preliminary injunction will be denied.

       /s/ William W. Caldwell
      William W. Caldwell
      United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD W. ILLES, SR., M.D.  :
    Plaintiff  :
      :
  vs.  : CIVIL NO. 1:12-CV-0964
      :
JEFFREY BEARD et al.,  :
    Defendants  :
      :
      :

*O R D E R*

AND NOW, this 23nd day of May, 2013, upon consideration of Plaintiff's motion for a preliminary injunction (doc. 6) and Defendants' motions to dismiss (docs. 10 and 26), it is ordered that:

    1. Plaintiff's motion for a preliminary injunction (doc. 6) is DENIED.

    2. Defendants' motions to dismiss (docs. 10 and 26) are GRANTED in part and DENIED in part.

    3. Counts I, II, III, V, and VI of Plaintiff's complaint are dismissed with prejudice.

4.  Count IV of Plaintiff's complaint is dismissed with prejudice as to Defendants Taggart, Murray, Varner, and Beard.  This count remains as to Defendant Chambers.

5.  Count VII of Plaintiff's complaint is dismissed with prejudice as to Defendants Horner, Murray, Varner, and Beard.  Count VII remains as to Defendants Chambers and Ellenberger.

        /s/ William W. Caldwell
        William W. Caldwell
        United States District Judge