UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD W. ILLES, SR., M.D.,  :
    Plaintiff  :
  :
vs.  :  CIVIL NO. 1:12-CV-0964
  :
  :
JEFFREY BEARD, Ph.D., et al.,  :
    Defendants  :

*M E M O R A N D U M*

*I.      Introduction*

      We are considering cross motions for summary judgment.  (Doc. 46; Doc. 49).  This matter relates to a complaint filed by Plaintiff Richard Illes pursuant to 42 U.S.C. § 1983.  In pertinent part, the complaint makes two claims.  (Doc. 1-1).  First, it alleges that Defendant Chris Chambers and Defendant Scott Ellenberger retaliated against Plaintiff in violation of his First and Fourteenth Amendment rights.  (Id. at 18).  Second, it asserts that Defendant Chambers denied Plaintiff food in violation of his Eighth Amendment right against cruel and unusual punishment.  (Id. at 14).  On March 30, 2015, Defendants moved for summary judgment on both claims.  (Doc. 46).  On April 7, 2015, Plaintiff filed a cross motion seeking summary judgment on his Eighth Amendment claim.  (Doc. 49).  For the reasons discussed below, we will grant Defendants' motion with respect to the retaliation claim, and we will deny both motions with respect to the Eighth Amendment claim.

*II.        Background*

Plaintiff is an inmate incarcerated within the Pennsylvania correctional system.  (Doc. 54 at 1).  In August of 2010, he was scheduled to make an appearance in this court as a plaintiff in an unrelated civil action.  (Id.).  Pursuant to a policy of the Pennsylvania Department of Corrections, when an inmate is scheduled to make a court appearance, the inmate is transferred to the nearest state correctional institution.  (Doc. 54 at 2).  Accordingly, to make the required appearance in this court, Plaintiff was temporarily transferred from his home institution to the state correctional institution in Camp Hill, Pennsylvania (SCI Camp Hill).  (Doc. 54 at 1).  Plaintiff's temporary transfer to SCI Camp Hill lasted from August 5, 2010 to August 31, 2010.  (Id.).

Upon his arrival at SCI Camp Hill, Plaintiff, like all temporarily transferred inmates, was assigned to the "Control Group."  (Doc. 54 at 2).  The Control Group was a special housing unit located in the E Block of the prison.  (Id.).  At the time of Plaintiff's assignment to the Control Group, Defendant Chambers was the Unit Manager of E Block and Defendant Ellenberger was the Unit Counselor.  (Doc. 54 at 4).  Plaintiff complained to Chambers and Ellenberger about his placement in the Control Group, claiming that the Control Group was unnecessarily more restrictive than the general population.  (Doc. 1-1 at 19).  Neither Defendant, however, was responsible for Plaintiff's assignment into the Control Group.  (Doc. 54 at 4).  Plaintiff's assignment was in accordance with a policy of SCI Camp Hill.  (Doc. 54 at 2).

As a housing unit that was more restrictive than the general population,

2

inmates in the Control Group were served meals in their cells.  (Doc. 54 at 5).  At each meal time, unit staff announced that meals were being served.  (Doc. 54 at 6).  Following the announcement, staff verified the number of food trays and checked the contents of the trays.  (Id.).  After this process, staff began serving the meals.  (Id.).  Generally, no more than ten minutes elapsed from the time the meals were announced to the time the meals were served.  (Id.).  Pursuant to Control Group rules, in order to receive the meal, the following conditions had to be satisfied: the inmate had to be standing at his door; the inmate had to be properly dressed; the light in the cell had to be on; and the bed had to be neatly made.  (Doc. 50-1 at 5).  If an inmate was not in compliance with this rule when staff arrived at his cell, the inmate would not receive the meal.  (Doc. 50-1 at 3).  Shortly after his arrival at SCI Camp Hill, the prison staff in E Block, finding that Plaintiff was not complying with the rules, began to deny Plaintiff meals.  (Id.).

Plaintiff asserts that his noncompliance was due to chronic pain.  (Id.).  The day after Plaintiff's arrival at SCI Camp Hill, a physician's assistant reviewed his prescription medications.   (Doc. 54 at 8).  At the time, Plaintiff was taking Ultram and Celebrex to relieve pain.  (Id.).  The physician's assistant issued an order discontinuing Plaintiff's use of Ultram but permitted continued use of Celebrex until his two-week supply was exhausted.  (Id.).  According to Plaintiff, the reduced medication caused him pain.  (Doc. 50-1 at 3).  The pain, in turn, prevented him from moving quickly enough to be in compliance with the meal rules by the time prison staff arrived at his cell to serve the

meals. (Doc. 57 at 2). As a result, he was denied meals. (Id.). Plaintiff asserts that he orally notified Defendant Chambers that he was being denied meals. (Doc. 50-1 at 3).

On August 12, 2010, complaining of pain, Plaintiff requested that his Ultram prescription be renewed. (Doc. 54 at 8). The physician's assistant offered alternative medications, but Plaintiff refused, stating that these medications presented dangerous side-effects. (Doc. 54 at 9; Doc. 57 at 2). A week later on August 19, 2010, Plaintiff again sought to have his prescription for Ultram renewed. (Id.). The medical staff again offered Plaintiff alternative medications, which he refused due to dangerous side-effects. At no point in Plaintiff's consultations with the medical staff, however, did he seek a disability exemption to meal rules. (Id.). On August 21, 2010, Plaintiff wrote a complaint addressed to Defendant Chambers. (Doc. 50-1 at 7). The complaint advised that Plaintiff was unable to comply with the rules and that he was being denied one or two meals each day. (Id.).

Over the course of Plaintiff's twenty-six days at SCI Camp Hill, he was denied forty-six meals. (Doc. 50-1 at 3). As an inmate housed in the Control Group, Plaintiff was not permitted to purchase food from the prison commissary. (Doc. 50-1 at 6). The lack of sustenance made Plaintiff weak, exacerbated his medical problems, and caused him to lose ten percent of his body weight. (Doc. 50-1 at 4). On April 4, 2012, Plaintiff filed a seven count complaint pursuant to 42 U.S.C. § 1983. (Doc. 1-1). Only his retaliation claim and his Eighth Amendment claim remain. See (Doc. 31).

*III.       Discussion*

*A. Standard of Review*

We will examine the motions for summary judgment under the well-established standard: summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find for the non-movant." Id. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

*B. Retaliation Claim*

Plaintiff's retaliation claim against Defendants Chambers and Ellenberger asserts that the policy of assigning temporary transferees to the more restrictive Control Group is retaliation against inmates who seek access to the courts. (Doc. 1-1 at 19). Like all § 1983 claims, to prevail on a retaliation claim, the plaintiff must demonstrate that

the defendant was personally involved in the wrongdoing. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim because he has failed to establish personal involvement on the part of either Defendant. (Doc. 55 at 4-6). In response, Plaintiff claims that Defendants were personally involved because they were "in charge" of E Block. (Doc. 56 at 2).

To demonstrate the personal involvement of a defendant, a plaintiff cannot rely on the doctrine of *respondeat superior*. Rode, 845 F.2d at 1207. Instead, the plaintiff must establish that the defendant had some affirmative part in the deprivation of a federally protected right. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In the context of a supervisory defendant, this can be shown by: (1) direct participation in the violation of the plaintiff's rights; (2) personal direction to subordinates to violate the plaintiff's rights; or (3) actual knowledge and acquiescence in a subordinate's constitutional violation. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

Here, Plaintiff has failed to make this showing. Because liability cannot be predicated on *respondeat superior*, the mere fact that Defendants were "in charge" is insufficient to establish their personal involvement. Further, in our review of Plaintiff's documents, we find no other evidence sufficient to establish Defendants' personal involvement. First, as admitted by Plaintiff, neither Defendant was responsible for Plaintiff's transfer to SCI Camp Hill or his assignment to the Control Group. (Doc. 54 at

4; Doc. 57 at 18).  Therefore, the personal involvement requirement is not satisfied by Defendants' personal participation or personal direction.  Second, to establish personal involvement through knowledge and acquiescence, the plaintiff must demonstrate that the defendant (1) had contemporaneous knowledge that a subordinate was violating the plaintiff's rights, (2) had actual supervisory authority over the alleged violator, and (3) failed to stop the subordinate's wrongdoing.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).  Although Plaintiff asserts that he complained to Defendants and they took no action, Plaintiff has produced no evidence that Defendants had supervisory authority over the individuals who assigned him to the Control Group.

Because Plaintiff has failed to show Defendants' personal involvement, we find that he has failed to establish an essential element of his claim.  Accordingly, we will grant Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim.

*C. Eighth Amendment Claim*

Plaintiff's Eighth Amendment claim against Defendant Chambers asserts that the denial of food violated his Eighth Amendment right against cruel and unusual punishment. (Doc. 1-1 at 14-15).  The Eighth Amendment's prohibition of cruel and unusual punishments imposes a duty on prison officials to provide humane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Id.  To establish that his conditions of confinement violate this requirement, an inmate must

7

satisfy two elements. The first element is objective. Id. at 834. It requires the inmate to show that the deprivation he suffered was sufficiently serious to implicate the Eighth Amendment. Id. This is satisfied if the deprivation results in the denial of "the minimal civilized measures of life's necessities." Id. The second element is subjective. Wilson v. Seiter, 501 U.S. 294, 298 (1991). It requires the inmate to show that the defendant acted with a sufficiently culpable state of mind. Farmer, 511 U.S. at 834. If the defendant was deliberately indifferent to the inmate's health and safety, the subjective element is satisfied. Wilson, 501 U.S. at 303.

In his motion for summary judgment, Defendant Chambers couches Plaintiff's Eighth Amendment claim as a medical one. (Doc. 55 at 10). As we read his brief, Chambers suggests that the gravamen of Plaintiff's claim is the revocation of his medication: the revocation of his medication caused him to miss meals and therefore it was deliberately indifferent to his medical needs. (Doc. 55 at 2, 10; Doc. 58 at 6). Framed in this light, Chambers argues that he is entitled to summary judgment because he relied on the expertise of the medical staff and was unaware that any additional action was needed. (Doc. 55 at 10). Plaintiff, in response, rejects Chambers' assertion that the Eighth Amendment claim is a medical indifference claim. (Doc. 56 at 3). According to Plaintiff, his claim avers that Chambers was deliberately indifferent to his health and safety by denying him food. (Id.). In his cross motion, Plaintiff argues that he is entitled to summary judgment because he notified Chambers that he was being denied meals and Chambers did nothing to remedy his lack of sustenance. (Doc. 50 at 3-4).

Contrary to Defendant Chambers' suggestion, we find Plaintiff's claim to allege that Chambers violated the Eighth Amendment by denying him food. We reach this conclusion by looking to the plain language of the complaint. First, in paragraph ninety-nine, Plaintiff sets out the objective element of his claim by stating that the "[w]ithholding of food to the point of losing 8% of body weight in 26 days is by the standards of civilized society, simply barbaric." (Doc. 1-1 at 13). Next, in paragraph ninety-eight, Plaintiff sets out the subjective element of his claim as follows: "Any reasonable person employed by the DOC in the Defendants' capacities, would know that withholding food because an inmate was in pain and could not always comply with the policy . . ., would be unconstitutional and constitute wanton disregard and deliberate indifference to the wellbeing of the Plaintiff." (Id.). Finally, in paragraph one hundred, Plaintiff identifies his injuries as being caused by the deprivation of food – "Plaintiff's pain and suffering from constant hunger, and precipitous loss of weight, were easily foreseeable consequences of the withholding of food." (Id.). From these paragraphs, it is clear to us that Plaintiff is alleging that the deprivation of food, not the deprivation of medication, violated his Eighth Amendment right against cruel and unusual punishment.[1]

---

1. Plaintiff is not claiming that Chambers was deliberately indifferent because he complained to Chambers about his pain, and Chambers did nothing to remedy it. Rather, Plaintiff is claiming that Chambers was indifferent because he complained to Chambers about not receiving meals, and Chambers took no action to ensure that he received adequate food. Accord (Doc. 31) (identifying the claim *sub judice* as relating to Plaintiff's meals and Counts One and Two as relating to the revocation of medication). As discussed below, the difference is more than semantics. See infra note 3.

Viewing Plaintiff's claim through the proper lens, we start our discussion with the objective element. To demonstrate that the deprivation of food was sufficiently serious so as to deny life's necessities, Plaintiff must show there was a sustained failure to provide food in a sufficient quantity to maintain normal health. See Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002). Although there is no precise formula for determining when a denial of meals constitutes a sustained failure, the Third Circuit has suggested that the denial of sixteen meals over twenty-three days is sufficient. Zanders v. Ferko, 439 F. App'x 158, 160 (3d Cir. 2011).

Here, Plaintiff has produced evidence that he was denied forty six meals over twenty-six days. (Doc. 50-1 at 3). Chambers provides no contradictory evidence and does not provide any argument that explicitly addresses the seriousness of Plaintiff's deprivation. However, we recognize one argument in Chambers brief that speaks to the objective element of Plaintiff's claim. Chambers suggests that Plaintiff deliberately chose not to comply with the meal rules, arguing that no reasonable juror could find that Plaintiff was incapable of complying with the rules. (Doc. 55 at 13; Doc. 58 at 7-8). To support his argument, he produces evidence that Plaintiff was physically capable of complying with similar rules for attending visitations and traveling to the law library. (Doc. 58 at 7).

When there is a legitimate prison rule that sets reasonable conditions to the receipt of food, and the denial of food resulted from the inmate's deliberate noncompliance with that rule, courts have held that the Eighth Amendment is not implicated – regardless of whether the denial of food was sustained. See, e.g., Freeman

v. Berge, 441 F.3d 543 (7th Cir. 2006). The rationale is that the Eighth Amendment prohibits cruel and unusual punishment. When an inmate is denied meals because he chooses not to comply with legitimate rules, he is not punished. Freeman, 441 F.3d at 545. Rather, he is the "author of his [own] deprivation." Id.

In this case, however, there are questions of fact concerning whether Plaintiff's noncompliance with the meal rules was deliberate. In contrast to Chambers' evidence, Plaintiff asserts that his pain prevented him from complying with the rule, and he has produced evidence that he was not subjected to the same time constraints when attending visitations and when traveling to the law library. (Doc. 56-1 at 3). Accordingly, we find there are disputes of fact surrounding the objective element of Plaintiff's claim that require resolution by a trier of fact.[2]

The same is true for the subjective element of Plaintiff's claim. To demonstrate that a prison official was deliberately indifferent, an inmate must show that the official knew of and disregarded an excessive risk to the inmate's health and safety. Farmer, 511 U.S. at 837. The official must have been aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he also must have drawn the inference. Id. This can be proven by circumstantial evidence, and "a factfinder

---

2. Chambers makes a similar argument by stating that "Plaintiff was offered treatment for his pain and his resulting [noncompliance with the rules and loss of meals] were the result of his own refusals [of that treatment]." (Doc. 55 at 12; Doc. 58 at 6). There are questions of fact concerning this argument as well. Plaintiff has produced evidence that he could not take the alternative medications because of adverse side effects. (Doc. 1-1 at 5). See Solan v. Rank, 1:CV-06-0049, 2007 WL 141918, at *1 (M.D. Pa. Jan. 18, 2007) (Caldwell, J.) (stating that a verified complaint is treated as an affidavit for purposes of summary judgment).

may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

Chambers first suggests he did not have the requisite knowledge. He claims that he has no recollection of Plaintiff informing him that he was unable to comply with the rules and receive his meals. (Doc. 54 at 6). He goes on to argue that even if he was informed, he did not disregard the risk. As we read his moving papers, Chambers' argument is as follows. In accordance with prison policy, disability accommodations to the meal rules could only be issued by the medical staff. (Doc. 55 at 13). Plaintiff knew of the disability accommodation procedures because: (1) had Chambers been informed of Plaintiff's inability to receive meals, he "would have reminded" Plaintiff to seek a disability accommodation from the medical staff, and (2) Plaintiff had an inmate handbook that instructed him on how to seek a disability accommodation. (Doc. 54 at 6, 8 n.3). Even though Plaintiff had knowledge of the procedure, Plaintiff never sought an accommodation and so no accommodation was issued. (Doc. 55 at 13). Therefore, Chambers urges that his response was reasonable.[3] (Id.).

The evidence produced by Plaintiff, however, puts these facts in dispute. Plaintiff argues that Chambers did have the required knowledge. He asserts that he orally notified Chambers on multiple occasions, and he has produced a written

---

3. As mentioned above, Chambers also argues that his response was reasonable because he relied on the expertise of the medical staff that was treating Plaintiff's pain. The Third Circuit has indicated that an official is not indifferent to a medical complaint if the inmate was already being treated by a doctor. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Because we found that Plaintiff's claim is based on the denial of food, not the denial of medical care, Plaintiff's treatment by medical experts is not dispositive.

notification that he addressed to Chambers on August 21, 2010. (Doc. 50-1 at 3). From this evidence, Plaintiff argues that Chambers was aware that he was being denied meals and the risk associated therewith was obvious. (Doc. 50 at 3-4). He also produces evidence that Chambers disregarded the risk. Plaintiff's affidavit states that he was unaware of the accommodation procedures, that Chambers did not inform him of the disability accommodation procedure, and as a temporary transferee, he was not permitted to have the inmate handbook with him. (Doc. 57-1 at 3). Therefore, according to Plaintiff, Chambers response of doing nothing was not reasonable. (Doc. 50 at 4). Clearly, these disputes must be resolved by a trier of fact.

Because we find that both the objective and subject element of Plaintiff's Eighth Amendment claim pose genuine issues of material fact, we are precluded from granting either party summary judgment.

*IV.     Conclusion*

Based on the reasons discussed above, we will grant Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim, and we will deny both motions for summary judgment with respect to Plaintiff's Eighth Amendment claim. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge